UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

COVANCE LABORATORIES INC.,

Plaintiff,

vs.

CHROMADEX, INC., and
CHROMADEX ANALYTICS, INC.,

Defendants.

Case No. _____

**DEMAND FOR JURY TRIAL**

**COMPLAINT**

Plaintiff, Covance Laboratories Inc. ("Plaintiff" or "Covance"), by its undersigned counsel, as and for its Complaint, against Defendants ChromaDex, Inc. and ChromaDex Analytics, Inc., (collectively, "Defendants" or "ChromaDex"), alleges as follows:

**NATURE OF THE ACTION**

1. This is an action for specific performance or, in the alternative, breach of contract arising out of an Asset Purchase Agreement ("APA"), dated August 21, 2017, between Covance and ChromaDex whereby, among other things, ChromaDex represented and warranted that it had good and valid title, rights, and interest to certain assets, defined as the Purchased Assets in the APA, ChromaDex agreed to convey the Purchased Assets, and Covance agreed to buy the Purchased Assets for a defined Aggregate Purchase Price comprised of an Initial Purchase Price of $7,500,000 along with a Holdback Amount of $75,000, which was subject to certain adjustments. A true and correct copy of the APA is attached hereto as Exhibit A.

2. Since the APA's execution, despite its obligation to do so, and due demand having been made, ChromaDex has breached the APA by, among other things, failing to

assign, convey, or deliver to Covance its ComplyID library, a specifically identified Purchased Asset in Section 2.1(f) of the APA, and one to which ChromaDex represented and warranted it had good and valid title, rights, or interest.

3. Accordingly, Covance brings the present action for specific performance of ChromaDex's obligation to deliver the ComplyID library or, in the alternative, for breach of contract damages.

## PARTIES

4. Plaintiff Covance is a Delaware corporation with its principal place of business in Princeton, New Jersey.

5. Upon information and belief, Defendant ChromaDex, Inc. is a California corporation with its principal place of business in Irvine, California.

6. Upon information and belief, Defendant ChromaDex Analytics, Inc. is a Nevada corporation with its principal place of business in Carson City, Nevada and is a wholly-owned subsidiary of ChromaDex, Inc.

## JURISDICTION AND VENUE

7. This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332. The parties are of different states, and the value of specific performance and/or damages exceeds $75,000.

8. In addition, Section § 12.10 of the APA provides that each

> Seller Party and Purchaser hereby (a) agrees that any Proceeding in connection with or relating to this Agreement, any agreement contemplated hereby or any matters contemplated hereby or thereby, shall be brought in the United States District Court for the District of Delaware…; (b) agrees that in connection with any such Proceeding, such party shall consent and submit to personal jurisdiction in any such court described in clause (a) of this Section 12.10…

9. This court has personal jurisdiction over the parties, pursuant to Section § 12.10(b) of the APA.

10. Venue is proper in this court under 28 U.S.C. § 1391 in that ChromaDex conducts business in this district, and ChromaDex agreed to jurisdiction and venue in this district, pursuant to Section § 12.10(a) of the APA.

## FACTUAL BACKGROUND

### The Nature of Parties' Businesses

11. Covance is a leading contract research organization and drug development service company, providing, among other things, a wide range of early-stage and late-stage product development services on a worldwide basis, primarily to the pharmaceutical and biotechnology industries.

12. ChromaDex is a dietary ingredient and food ingredient company, which, upon information and belief, in addition to providing other products and services, provides contract research services for sourcing raw ingredients, including identifying the chemical compounds that comprise those raw ingredients.

### The Importance of Reference Standards in Consumer Product Testing

13. The sourcing and identification of raw ingredients and the positive identification of such raw ingredients is a critical part of consumer product testing mandated by the United States Food and Drug Administration ("FDA").

14. Such testing furthers the FDA's mission, which includes promoting public health by ensuring the safety and efficacy of—among other things—dietary supplements, consumer food and food-related products.

15. The FDA fulfills its mandate in part through the promulgation and enforcement of current Good Manufacturing Practice regulations ("cGMP"). Manufacturer adherence to the cGMP helps assure the identity, safety, and quality of consumer products.

16. Given the range of products available to consumers, it is critical to public health and global commerce that there be a fast, efficient, and reliable means of testing marketed and marketable products.

17. Testing such products to identify their ingredients and any potential adulterants reassures consumers that the items they are purchasing are what they purport to be and are safe for consumption. Moreover, such testing helps product manufacturers stay compliant with the FDA's cGMP.

18. In order to analyze a product sample to identify ingredients and potential adulterants, there must be reference standards against which the sample's test results are compared. Each reference standard is like a chemical "fingerprint" record that identifies what a substance is.

19. Only after comparing a sample's test results against known reference standards will an evaluator (human or computer) be able to identify the sample's constituent elements with a reasonable degree of certainty and thus ensure that the sample either contains or does not contain certain ingredients or adulterants.

20. To be scientifically valid, reference standards have to be authenticated and consistently reliable. The process of defining scientifically valid reference standards is a time- and resource-intensive one.

21. The value of a library of reference standards depends heavily upon the number of authenticated reference standards it contains. The more individual reference standards a library contains, the more valuable it is.

22. The existence of authenticated reference standards confers benefits to manufacturers and consumers alike. Manufacturers are able to sell their products with greater confidence, knowing whether what they sell deviates from their prior specifications. Consumers are able to buy those products with greater confidence, knowing that what they buy has been rigorously tested and determined to be what has been represented and to be safe for use.

### Covance Purchases ChromaDex's Reference Standards

23. On August 21, 2017, Covance and ChromaDex entered into the APA.

24. Through the APA, Covance purchased, among other things, ChromaDex's analytical chemistry testing business for food and food-related products.

25. The purchased business had expertise in analyzing various qualities of a given product for things such as nutritional value, purity, contaminants, and stability. Such services are broadly usable and valuable to diverse businesses like food manufacturers, dietary supplement companies, agricultural producers, and restaurants.

26. ChromaDex represented and warranted that it had good and valid title and rights to the Purchased Assets, which were essential to the operation of the business being purchased by Covance, including ChromaDex's ComplyID library, which ChomaDex marketed and represented as consisting of over 4,000 reference standards.

27. The existence of, and the obligation to convey, ComplyID library was a material and inseparable part of Covance's bargain with ChromaDex, and a substantial part of the value of the transaction between Covance and ChromaDex.

28.     Section 2.1(f) of the APA describes the assets Covance purchased that pertain to ChromaDex's testing business to include the ComplyID Library, stating:

> with respect to the Business, any and all past and pending documents of sales and service information, customer lead lists, customer lists…payor and supplier lists, inventory cost records, machinery and equipment records, mailing lists, sales and purchasing materials, quality control records and procedures, standard operating procedures, analytical methods, validation documents and reports, books of account, customer records and records quotations, purchase orders, sales, brochures, advertising materials, samples, display materials, and all files related to the Business on the Business' server (*including the ComplyID library*)…

(Emphasis added.)

29.     ChromaDex further represented and warranted in Article V of the APA and its various Sections that it had good and valid title, rights, or interests in the Purchased Assets; and, therefore, the ability to convey those assets, including the ComplyID library, to Covance.

30.     Covance performed all of its obligations under the APA.

31.     ChromaDex has breached the APA by, among other things, failing to assign, convey, or deliver to Covance the ComplyID library or by failing to have the good and valid title, rights, or interests it represented it had, and by otherwise failing to perform its obligations under the APA, which would have given Covance the benefit of the ComplyID library. Instead, ChromaDex has provided Covance with only piecemeal access to the ComplyID library by offering individual reference standards upon Covance's request and disclaiming any obligation to continue to provide such reference standards into the future without being provided additional compensation.

32. Piecemeal access by request is neither something contemplated in the APA nor substantially similar to the transfer of the ComplyID library into Covance's possession.

### Covance's Indemnification Claim Is Rejected

33. Section 11.4 of the APA governs indemnification procedures between the parties. Section 11.4(a) requires the delivery of a claim notice that

> shall state that such Indemnified Party believes that there is or has been a breach, inaccuracy, non-fulfillment or non-performance of a representation, warranty, covenant or agreement contained in this Agreement or any other Transaction Document or that such Indemnified Party is otherwise entitled to indemnification or reimbursement…and contain a description of the circumstances supporting such Indemnified Party's belief that there is or has been such a breach or that such Indemnified Party is so entitled to indemnification or reimbursement…

34. Given ChromaDex's continued refusal to produce the ComplyID library, on or about October 9, 2018, Covance submitted a claim notice for indemnification, pursuant to Section 11.4(a).

35. On October 19, 2018, ChromaDex responded by letter and denied any breach of the APA, including any obligation to convey the ComplyID library to Covance under the APA.

36. ChromaDex continues to be in breach of its obligations under the APA as it relates to the ComplyID library and Covance's rights to the benefits of it.

### CLAIMS FOR RELIEF

### COUNT I

### Specific Performance

37. Covance incorporates by reference the allegations contained in paragraphs 1 through 36 as if fully set forth herein.

38. The APA is a binding contract between Covance and ChromaDex.

39. Covance has performed all of its obligations under the APA.

40. ChromaDex has breached the APA by failing to assign, convey, or deliver the ComplyID library to Covance, or by failing to have the good and valid title, rights, or interests it represented it had in the ComplyID library, and has continued to fail to assign, convey or deliver the ComplyID library, a Purchased Asset, or otherwise remedy its breach of the APA even after being notified of its failure to perform and offered an opportunity to cure its breach.

41. ChromaDex's breach of the APA has caused injury to Covance by depriving Covance of the benefit of its well-negotiated bargain, including the benefit of a Purchased Asset belonging to Covance by virtue of the APA.

42. Covance seeks specific performance of the APA by ChromaDex in producing the ComplyID library.

43. Covance is entitled to an order directing ChromaDex to comply with the APA by producing the ComplyID library.

44. Given the uniqueness of the ComplyID library and the lack of a readily available alternative, Covance has no adequate remedy at law.

## COUNT II

### Breach of Contract

45. Covance incorporates by reference the allegations contained in paragraphs 1 through 44 as if fully set forth herein.

46. ChromaDex materially breached the APA by failing to assign, convey, or deliver the ComplyID library to Covance or by failing to have the good and valid title, rights, or interests it represented it had in the ComplyID library.

47. As a direct and proximate result of ChromaDex's breach of its contractual obligations to Covance, Covance has been damaged in an amount to be determined at trial.

48. As an alternative to the specific performance remedy, Covance is entitled by law to recover this amount and any related costs.

## PRAYER FOR RELIEF

WHEREFORE, Covance respectfully requests that this court:

A. issue an order for specific performance requiring ChromaDex to produce or cause to be assigned, conveyed, or delivered the ComplyID library to Covance;

B. award Covance damages it has suffered for an amount to be determined at trial;

C. award Covance its costs, prejudgment interest, and expenses incurred in bringing and prosecuting this action, including reasonable attorneys' fees;

D. grant any further relief to which Covance may be entitled and which this court deems to be just and equitable.

## JURY DEMAND

Under Rule 38 of the Federal Rules of Civil Procedure, Covance requests a trial by jury of any issues so triable by right.

                HEYMAN ENERIO
                GATTUSO & HIRZEL LLP

                */s/ Dominick T. Gattuso*
                Dominick T. Gattuso (#3630)
                300 Delaware Ave., Suite 200
                Wilmington, DE 19801
                (302) 472-7300
                dgattuso@hegh.law

                *Attorneys for Plaintiff*

Of Counsel:

Robert Steiner
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
(212) 808-7965
rsteiner@kelleydrye.com

Dated:  January 10, 2019